**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 24-2129**

———————————

CHARLES MILLER, an individual,

　　　　　Plaintiff - Appellant,

　　v.

CHARLESTON AREA MEDICAL CENTER, INC.,

　　　　　Defendant - Appellee.

———————————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Joseph R. Goodwin, District Judge.  (2:23-cv-00340)

———————————

Submitted:  December 19, 2025　　　　　　　　　Decided:  January 6, 2026

———————————

Before KING, WYNN, and QUATTLEBAUM, Circuit Judges.

———————————

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge King and Judge Quattlebaum joined.

———————————

**ON BRIEF:**  Robert E. Barnes,  Lexis Anderson, BARNES LAW, Los Angeles, California, for Appellant.  Eric E. Kinder, Chelsea E. Thompson, SPILMAN THOMAS & BATTLE PLLC, Charleston, West Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Under Title VII, an employer must reasonably accommodate an employee's religious beliefs unless doing so would result in an undue hardship on the employer.

In this case, Charles Miller was fired from his job as a respiratory therapist at a hospital after he refused to receive the COVID-19 vaccine per federal regulations. Miller sued his former employer for religious discrimination, alleging that they should not have denied his religious exemption request.

Because the district court properly concluded that the hospital could not accommodate an unvaccinated respiratory therapist without incurring a substantial risk to the health of their employees and patients, and that such a risk constituted undue hardship, we affirm the district court's grant of summary judgment in favor of the hospital.

I.

A.

For nearly twenty-five years, Plaintiff Charles Miller worked as a respiratory therapist for Defendant Charleston Area Medical Center (Charleston Medical Center), which operates the largest hospital in Charleston, West Virginia. As a respiratory therapist, Miller administered care and managed ventilators for patients with respiratory conditions. That role required Miller to come in regular and direct contact with patients, families, visitors, and other hospital staff.

Charleston Medical Center has long required its staff to receive vaccinations for infectious diseases. And until 2021, Miller had complied with those vaccination requirements. But then the COVID-19 pandemic hit. And in August 2021, in anticipation

2

of a Centers for Medicare & Medicaid Services (CMS) rule requiring hospitals to ensure their employees receive the COVID-19 vaccine, Charleston Medical Center added COVID-19 to its list of required vaccinations. *See* 86 Fed. Reg. 61561, 61616–27; 42 C.F.R. § 482.42.

Just as it did with other vaccines, Charleston Medical Center allowed employees to seek medical or religious exemptions from its COVID-19 vaccination requirement. Charleston Medical Center allowed employees to continue their employment while the hospital considered their exemption request. However, once Charleston Medical Center rejected a particular request, it deemed any employee that remained unvaccinated to have "voluntarily resigned from employment." J.A. 385.[1]

In September 2021, Miller submitted his exemption request. He asserted that the COVID-19 vaccine "us[ed] fetal cell lines" and that "[p]artaking in a vaccine made from aborted fetuses makes me complicit in an action that offends my religious faith." J.A. 398. He continued that "any coerced medical treatment goes against my religious faith and the right of conscience to control one's own medical treatment[.]" J.A. 398. He also listed detailed reasons why he believed the vaccine requirement was illegal and violated his personal rights. And he disclosed that he suffered from several cardiac conditions, which motivated him "not to take the risk to take this vaccination[.]" J.A. 400.

In February 2022, Charleston Medical Center denied Miller's medical and religious exemption requests, noting that Miller had not cited a specific tenet of his religious belief

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

that contradicted the vaccine policy, that certain COVID-19 vaccine options did not use fetal cell lines, and that Miller had not sought vaccine exemptions for seasonal flu in the past. Charleston Medical Center also confirmed that "every request for a religious accommodation was reviewed by an internal team to determine if the request stated a sincerely-held religious belief (as opposed to moral or personal) that must be reasonably accommodated, where possible, without undue hardship, pursuant to state and federal law." J.A. 425. Miller elected not to receive the vaccine and was terminated from his employment with Charleston Medical Center on February 24, 2022.

## B.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Miller filed a complaint against Charleston Medical Center in federal court, alleging (1) religious discrimination and retaliation under Title VII of the Civil Rights Act, (2) religious discrimination under the West Virginia Human Rights Act (WVHRA), and (3) disability discrimination under federal and state law for the denial of his medical exemption.

On Charleston Medical Center's motion, the district court dismissed all but the religious discrimination claims under Title VII and WVHRA.

After discovery, Charleston Medical Center moved for summary judgment, arguing that Miller's objections to the vaccine were neither religious nor sincere and that allowing an unvaccinated respiratory therapist to continue working would pose an undue hardship for the hospital. To support its undue-hardship defense, Charleston Medical Center cited the economic risks of losing Medicare and Medicaid contracts for violating the CMS

4

mandate, as well as the non-economic risks of increased COVID-19 transmission to the "patients, families, staff, volunteers, visitors, and health care providers" with whom Miller would interact on a routine basis. J.A. 456. Charleston Medical Center pointed out that, as a respiratory therapist, Miller "almost certainly would have worked directly with patients who had COVID-19[.]" J.A. 456.

The court granted summary judgment for Charleston Medical Center. Without reaching the religious nature or sincerity of Miller's beliefs, the court found that Miller's continued employment as an unvaccinated respiratory therapist posed an undue hardship to Charleston Medical Center.

Miller timely appealed.

## II.

We review a grant of summary judgment de novo, "using the same standard applied by the district court." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). Accordingly, we consider evidence and make reasonable inferences "in the light most favorable to the nonmoving party." *Id.*

## III.

Miller appeals only the district court's finding of undue hardship. With the benefit of recent Supreme Court and Fourth Circuit guidance on this precise issue, we affirm.

Under Title VII of the Civil Rights Act of 1964, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual . . . because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). When assessing a claim that an employer failed to accommodate an employee's religion, we use a burden-shifting

5

framework. First, the employee must establish a prima facie case that their employer failed to accommodate their bona fide religious belief. *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008). Then, "the burden . . . shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." *Id.* (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996)) (cleaned up).

Because the district court assumed without deciding that Miller had established his prima facie case, we address only the question of whether accommodating Miller's religious exemption would constitute an undue hardship for Charleston Medical Center. We agree with the district court that it would.

First, we discuss the standard for undue hardship under Title VII, as we recently articulated it in *Hall v. Sheppard Pratt Health System, Inc.*, 155 F.4th 747 (2025). Then, we apply that standard to the facts in this case.

A.

Under Title VII, an employer need not accommodate an employee's requested religious exemption if doing so would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).[2] In construing "undue hardship," the lower

---

[2] Miller also seems to appeal the district court's judgment on his claims under the WVHRA. As the district court noted, the West Virginia Supreme Court construes the WVHRA "to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications[.]" *Hanlon v. Chambers*, 464 S.E.2d 741, 754 (W. Va. 1995). The WVHRA bars employers from discrimination based on religion. *See* W. Va. Code §§ 16B-17-3(h); 16B-17-9(1). Further, West Virginia state regulations mirror the undue-hardship standard in Title VII. *See* W.

6

courts, applying Supreme Court precedent, initially required that employers demonstrate burdens or costs that are "more than . . . *de minimis*." *Groff v. DeJoy*, 600 U.S. 447, 454 (2023) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)). However, the Supreme Court has since clarified the Title VII undue-hardship standard in *Groff*. *Id.* at 473. There, the Court held that undue hardship exists when an employer shows that "granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. In evaluating these costs, we must consider "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact[.]" *Id.*

We recently applied the *Groff* standard to mandatory COVID-19 vaccination for healthcare employees. *See Hall*, 155 F.4th at 748–49.

In *Hall*, an admissions coordinator at an in-patient clinic for patients with eating disorders applied for a religious exemption to the health system's COVID-19 vaccination mandate. *Id.* at 749. But we held that her employer would have suffered an undue hardship if it had been forced to allow her to work unvaccinated based on the nature of the clinic's business. Specifically, "Hall's position required her to interact with medically compromised patients" and with her fellow employees. *Id.* at 753–54. Her unvaccinated status would have increased the risk of a COVID-19 outbreak, which would have been severely disruptive for patients and for the clinic. *Id.* And the clinic had considered

---

Va. Code St. R. § 71-3-3. Accordingly, we agree with the district court that application of the state standard does not deviate from the federal standard here, and we therefore extend our analysis to both claims.

7

alternative accommodations, such as allowing Hall to work remotely, but had ultimately determined that it could not accommodate the requested exemption without undue hardship. *Id.* at 754.

In determining that these facts sufficed to allow the clinic to deny Hall's request, we emphasized that undue hardship could arise from "economic and non-economic costs" incurred by granting the exemption. *Id.* at 752. Non-economic costs include "threats to the health and safety of employees and the people they serve." *Id.* at 753. We also held that courts should evaluate the burden of granting a particular religious accommodation "in the aggregate." *Id.* at 752 (citing *Hardison*, 432 U.S. at 84 n.15). That is, courts should consider the costs an employer incurs by accommodating not just the plaintiff, but also "all similarly situated employees." *Id.*

### B.

Following *Hall*, we turn to whether Charleston Medical Center would incur an undue hardship by granting Miller's religious-exemption request. Considering all evidence in the light most favorable to Miller, we agree with the district court that Charleston Medical Center successfully demonstrated an undue hardship.

Charleston Medical Center asserts that allowing Miller to continue treating patients in his role as a respiratory therapist without the protection of a vaccine would pose an undue hardship on the hospital for two independent reasons: (1) it would unacceptably increase the risk of transmission of COVID-19 to patients and staff, and (2) his continued employment would bring the hospital out of compliance with the CMS mandate. We need not address Charleston Medical Center's argument as to the CMS mandate, however,

8

because the increased risk of transmission alone is sufficient to demonstrate an undue hardship to the hospital.

Our prior decision in *Hall* all but decides this case. As in *Hall*, the plaintiff here was in direct and regular contact with staff and highly sensitive patients at a medical facility. Also as in *Hall*, the medical-facility employer had a procedure in place for evaluating religious exemptions to its vaccination requirement. And Miller concedes, as did Hall, that the vaccine effectively diminished the risk of "dangerous or deadly transmission" of COVID-19. J.A. 26.

Charleston Medical Center, much like the employer in *Hall*, ultimately denied the plaintiff's requested religious exemption to promote its goal of "provid[ing] the safest environment for our employees, patients, visitors and others who come to our facilities, and in doing so minimiz[ing] the risk of making any patient sicker by transmitting COVID-19." J.A. 384. In making that decision, the hospital here, as in *Hall*, "considered the effect of granting not just [the plaintiff's] request but also those of the significant number of other employees requesting a religious exemption across the hospital system." *Hall*, 155 F.4th at 754.

Despite those substantial similarities, Miller claims his case is different. Specifically, he argues that Charleston Medical Center failed to provide an "individualized assessment" of his particular circumstances or consider alternative "accommodations" that could have mitigated the hardship of Miller's continued employment. Opening Br. at 25.

Miller is right that there are some differences between his case and *Hall*. There is scant evidence in the record that Charleston Medical Center spent the kind of time

9

brainstorming potential accommodations that the hospital system in *Hall* did. But we are unpersuaded that this difference renders the district court's grant of summary judgment erroneous.

For one, we never suggested that the *Hall* employer's efforts to identify potential accommodations represented the floor of what an employer must do to demonstrate undue hardship. There, to be sure, the employer had "put[] its strongest foot forward" by "consider[ing] not only the employee's suggested accommodation but also other potential accommodations," and we therefore noted that the hospital system had "*easily* demonstrated the requisite undue hardship necessary to deny Hall's religious accommodation request under Title VII." *Hall*, 155 F.4th at 752, 755 (emphasis added). But future litigants should not view our opinion in *Hall* as providing a checklist for demonstrating undue hardship; more modest efforts by an employer can be enough.

We also think there is an obvious factual difference between this case and *Hall* that would have made a search for alternative accommodations futile in Miller's case. Hall was an admissions coordinator who had regular but somewhat brief interactions with patients. Her job was simply to complete intake procedures that would then allow other treating physicians to provide care. As such, Hall argued—both to her employer and this Court— that she could perform at least parts of her job remotely. But Miller was a treating respiratory therapist. His core job duties required him to interact in-person with patients with respiratory issues—patients particularly vulnerable to the effects of a nosocomial respiratory infection like COVID-19—and he never suggested (nor, we think, could he) that he could perform this role remotely.

10

We agree, then, with the district court that, given the particular set of facts presented here, a roving search for alternatives would have been futile because it was "painstakingly obvious" that there was no alternative arrangement that would allow a respiratory therapist to continue treating his patients for a respiratory illness without the protection of a vaccine. *Miller v. Charleston Area Med. Ctr.*, No. 2:23-cv-340, 2024 WL 4518293, at *5 (S.D.W. Va. Oct. 17, 2024). Some of our peer circuits have recognized this narrow futility exception even post-*Groff. See, e.g.*, *Smith v. City of Atl. City*, 138 F.4th 759, 774 (3d Cir. 2025) (employer may still "decline[] to consider any accommodation as futile due to the presence of undue hardship"); *Bordeaux v. Lions Gate Ent., Inc.*, No. 23-4340, 2025 WL 655065, at *1 n.3 (9th Cir. Feb. 28, 2025) (employer "was not required to discuss an infeasible alternative accommodation"). We caution, however, that the circumstances rendering a search for alternative accommodations truly futile are rarely presented. Those circumstances are presented here due to both the particular nature of Miller's job as a respiratory therapist and the particular nature of the COVID-19 illness that Charleston Medical Center sought to safeguard against through its vaccine mandate.

Therefore, considering the nature of Charleston Medical Center's business and the practical effect granting Miller's request would have had on the hospital, we agree with the district court that Charleston Medical Center demonstrated that accommodating Miller's requested religious exemption would have caused undue hardship.

IV.

For the foregoing reasons, the district court's judgment is affirmed.

*AFFIRMED*

11